IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

WARNER STREET, INC.                     :
              Plaintiff,                     :
      v.                     :     CIVIL ACTION NO. L-07-986
                               :
BALTIMORE DEVELOPMENT                     :
CORP., et al.                     :
              Defendants.                     :

## MEMORANDUM

Plaintiff Warner Street, Inc. ("Warner Street") filed this action against Defendants Baltimore Development Corp. ("BDC"), the Mayor and City Council of Baltimore ("the City"), M.J. Brodie ("Brodie"), Phil E. Croskey ("Croskey"), and Michael Pokorny ("Pokorny") (collectively, the "City Parties") on April 18, 2007.  Proceeding under 42 U.S.C. § 1983, Warner Street seeks declaratory and injunctive relief against condemnation proceedings now pending in the Circuit Court for Baltimore City, initiated by the City Parties on the same day as the present lawsuit.

Now before the Court is the City Parties' Motion to Dismiss. The issues have been thoroughly briefed and no hearing is necessary. See Local Rule 105.6 (D. Md. 2004). Because the Court concludes that abstention is warranted under the authority of Younger v. Harris, 401 U.S. 37 (1971), it will, by separate order, GRANT Defendants' motion and DISMISS this action with prejudice.

**I.**     **Background**

Warner Street is the owner of six parcels of real property ("the Properties") located in

southern Baltimore City, adjacent to the Middle Branch of the Patapsco River.[1]  In March 2002, the

Baltimore City Council passed an ordinance adopting the Carroll Camden Urban Renewal Plan ("the

Plan"), which designated a 500-acre plot now referred to as "Gateway South" for redevelopment.[2]

Ordinance No. 02-296, last amended by Ordinance No. 06-321 (approved on October 5, 2006). The

Plan identified 13 properties within the redevelopment area, including the six Warner Street Properties,

for acquisition by the City through purchase or condemnation. Id., Exhibit 1.

In January 2006, BDC issued a "Request for Qualifications" (RFQ), inviting submissions from

parties interested in redeveloping the designated properties. Based on responses to the RFQ, BDC

asked four developers to submit specific proposals for developing the Gateway South project. The

project was ultimately awarded to Cormony Development LLC ("Cormony") in late 2006.

Meanwhile, BDC and Warner Street attempted to negotiate a voluntary sale of the Properties.

BDC made its initial purchase offer in March 2006, but Warner Street objected that the price was too

low. According to Warner Street, the appraisal on which BDC's offer was based had incorrectly

concluded that the highest and best use of the Properties was "industrial only."[3] BDC responded that it

---

[1] The parcels are known as 1501, 1601, 1629 and 1633 Warner St., 2104 Worcester St., and 2102 Oler St., Baltimore, Maryland 21230-3208.

[2]  The stated objective of the plan is to "strengthen economic development, support district revitalization, encourage strategic redevelopment of underutilized industrial properties, advance industrial development in targeted areas and acknowledge the historical industrial character within Renewal Plan boundary areas." Ordinance 02-296 at 2.

[3] Warner Street alleges that BDC and the City knew this conclusion was inaccurate. See Pl.'s Mem, at 6 ("By the time of the meeting [to discuss BDC's initial purchase offer], defendants [] Brodie and [] Pokorny had stated to the press on several occasions that the Properties were ideally suited for mixed use, possibly including residential use.").

would increase its offer only if Warner Street obtained an independent appraisal at its own expense.

    In November 2006, Warner Street requested that BDC produce certain records pursuant to

Maryland's Public Information Act, Md. Code Ann. State Gov't § 10-611 et seq.[4] Specifically,

Warner Street sought documents related to the redevelopment proposal selection process and BDC's

decision awarding the Gateway South project to Cormony. After requesting an extension of time to

produce the records, BDC initially informed Warner Street that it intended to withhold certain intra-

and interagency memoranda, as well as responses to the RFQ and specific development proposals by

bidders other than Cormony. Over a contentious period culminating on April 2, 2007, however, BDC

eventually released most of the information[5] that Warner Street requested.[6]

    Warner Street obtained an independent appraisal of the Properties in January 2007. The

appraiser's report concluded that the highest and best use of the Properties was not "industrial only,"

and that the Properties were worth more than twice the amount of the City's initial offer. See Pl.'s

Mem. in Supp. of Motion for Temporary Restraining Order, at 7.

---

    [4] On November 13, 2006, the Maryland Court of Appeals held in Baltimore Development
Corp. v. Carmel Realty Associates, 395 Md. 299 (2006), that BDC is an "instrumentality" of the City
for purposes of the Act.

    [5] BDC has yet to disclose the economic terms of proposals submitted by developers other than
Cormony. Pl.'s Mem. in Supp. of Motion for Temporary Restraining Order, at 7.

    [6] The responses to the RFQ and specific development proposals by bidders other than
Cormony were provided to Warner Street on April 2 pursuant to a confidentiality agreement that
prohibits Warner Street from referring to those records in any court proceeding that is not sealed. Id. at
6, n.1. Accordingly, Warner Street has moved for leave to file these documents as exhibits under seal.
(Docket No. 3). Because the Court concludes that the Younger doctrine requires dismissal of Warner
Street's claim, however, the motion is DENIED.

Over the next three months, the parties continued their efforts to negotiate a voluntary sale. Throughout these negotiations, Warner Street contends that the City threatened to initiate "quick take" proceedings in the Circuit Court for Baltimore City if an agreement could not be reached.[7] Pl.'s Mem. at 21. On March 22, 2007, the City submitted its "final" offer to purchase the Properties and informed Warner Street that it would file a condemnation action if its offer was not accepted. Warner Street responded by notifying the City Parties that it intended to challenge their practices in this Court.

According to Warner Street, the City Parties requested that it delay filing suit in order "to facilitate further negotiations." Pl.'s Mem. at 3. In a series of emails exchanged between March 30 and April 17, Warner Street agreed to delay its federal action in exchange for a commitment by the City Parties not to initiate condemnation proceedings before a succession of specified dates. In the last of these emails, dated Tuesday, April 17, the City Parties informed Warner Street that they would not "file quick take [condemnation proceedings] before late next week at the earliest [but that they] might file regular condemnation proceedings as early as late *this* week." See Pl.'s Mem., Exhibit E (emphasis added).

On the evening of April 17, in accordance with Rule 65 of the Federal Rules of Civil Procedure, Warner Street notified the City Parties that it intended to seek an *ex parte* temporary restraining order in this Court the following morning. By the time Warner Street filed this lawsuit on April 18, however, the City Parties had already initiated condmenation proceedings in the Circuit Court

---

[7] In a "quick take" proceeding, see Baltimore City Public Local Laws § 21-16, a property owner has 10 days to file an answer to the City's Petition for Immediate Taking. If the owner contests the validity of the proposed taking, a hearing must be scheduled within 15 days after the answer is filed.

for Baltimore City.[8]

In its complaint, Warner Street contends that the Properties are being taken for an unlawful private use and that the practices employed by the City Parties in this case constitute a denial of procedural due process. Accordingly, Warner Street seeks a declaratory judgment, pursuant to 42 U.S.C. § 1983 and 28 U.S.C. §§ 2201(a) and 2202, that the taking of the Properties violates the Fifth and Fourteenth Amendments of the federal Constitution.[9] To prevent the violation of its constitutional rights, Warner Street seeks to enjoin the eminent domain proceedings now pending in the Circuit Court for Baltimore City until this Court rules on the validity of the proposed taking.

Warner Street also asserts a variety of state law claims. The first is that the taking of the Properties violates Article 24 of the Maryland Declaration of Rights, as well as Article 3, Section 40A of the Maryland Constitution, for the same reasons it violates the Fifth and Fourteenth Amendments of the federal Constitution. Second, Warner Street contends that the proposed taking violates Section 15A(a)(1) of Article 2 of the Baltimore City Charter, which prohibits the City from using its eminent domain powers for the primary purpose of facilitating industrial or economic growth. See, e.g., Mayor and City Council of Baltimore v. Chertkof, 441 A.2d 1044, 1053 (Md. 1982). Third, Warner Street asserts that the Carroll Camden Urban Renewal Plan does not meet the requirements of section 2-5(b) of the Baltimore City Code, which states that the purpose of an urban renewal plan must be the

---

[8] The action now pending is not a "quick take" proceeding, but a regular condemnation action filed pursuant to Article 13, §§ 2-7(b), (h), and (jj) of the Baltimore City Code. The City retains the option, however, of filing a "quick take" petition at some later point if it so desires.

[9] The Fifth Amendment provides, in relevant part: "[N]or shall private property be taken for public use, without just compensation." U.S. Const. amend. V.

elimination or prevention of blight, deterioration, or slums. To prevent these violations of state and local law, Warner Street seeks an injunction prohibiting the City Parties from "prosecuting any proceeding to acquire the Properties by eminent domain[.]" Compl., ¶ 79.

Warner Street's final state law claim is that BDC has violated the Maryland Public Information Act by withholding documents relating to its deliberative process. To remedy this violation, Warner Street seeks an injunction preventing BDC from continuing to withhold the documents, as well as an order requiring their disclosure.

In a teleconference conducted on April 20, 2007, the Court denied Warner Street's motion for a temporary restraining order. On its own motion, the Court also directed the parties to address whether abstention might be appropriate under the circumstances of this case. Pursuant to the Court's instructions, Warner Street and the City Parties conferred to discuss a mutually acceptable disposition, but were unable to reach an agreement. The City Parties then filed this motion to dismiss on May 16, 2007.

## II.      Discussion

The City Parties make two arguments in support of their motion to dismiss. They first contend that the Court should abstain from exercising its jurisdiction over Warner Street's claims and dismiss this action with prejudice. They also argue that Counts 1 and 2 of Warner Street's complaint allege no actionable conduct and are in any event barred by the Anti-Injunction Act, 28 U.S.C. § 2283. Accordingly, the City Parties argue that Warner Street's complaint fails to state a claim for relief.[10]

---

[10] In the event Counts 1 and 2 are dismissed, the City Parties argue that the Court is without jurisdiction over Warner Street's remaining claims, all of which are grounded in state law. See 28

For the following reasons, we conclude that the <u>Younger</u> abstention doctrine prevents us from granting the equitable remedies that Warner Street asks us to provide. Accordingly, we are constrained to dismiss this action with prejudice, without reaching the City Parties' argument that Warner Street has failed to state a claim.[11]

      A.      <u>Abstention Analysis</u>

As a general matter, "federal courts have a strict duty to exercise the jurisdiction conferred upon them by Congress." <u>Quackenbush v. Allstate Ins. Co.</u>, 517 U.S. 706, 716 (1996); <u>see also</u> <u>England v. Louisiana Bd. of Med. Examiners</u>, 375 U.S. 411, 415 (1964) ("[T]he federal courts have a virtually unflagging obligation to exercise their jurisdiction[.]" (internal quotations omitted)). The judicially-created abstention doctrines are "extraordinary and narrow exception[s]" to this duty, <u>see</u> <u>Quackenbush</u>, 517 U.S. at 716, allowing federal courts to decline jurisdiction only when necessary "to serve an important countervailing interest." <u>Colorado River Water Conservation Dist. v. United States</u>, 424 U.S. 800, 813 (1976). Principles of comity and federalism,[12] deference to complex state

_____

U.S.C. 1367(c)(3) (providing that a District Court may decline to exercise supplemental jurisdiction if it has "dismissed all claims over which it has original jurisdiction.").

[11] The Court notes, however, that Warner Street's action is *not* barred by the Anti-Injunction Act. The Supreme Court has held that 42 U.S.C. § 1983 expressly authorizes injunctions of state court proceedings, <u>see</u> <u>Mitchum v. Foster</u>, 407 U.S. 225 (1972). Accordingly, the present lawsuit, which seeks both declaratory and injunctive relief pursuant to § 1983, is beyond the application of the Act. Nevertheless, the <u>Younger</u> abstention doctrine constitutes an "independent barrier" to federal court injunctions of state court proceedings; "[b]oth must be overcome." <u>See</u> Erwin Chemerinsky, <u>Federal Jurisdiction</u> (Aspen 5th ed. 2007), 743.

[12] <u>See</u> <u>Younger</u>, 401 U.S. 37 (1971).

administrative procedures,[13] and proper regard for wise judicial administration[14] may each warrant

abstention in an appropriate case. Quackenbush, 517 U.S. at 716, 728.

      The City Parties argue that abstention is required under the doctrines announced in Younger,

Colorado River, and Burford, 319 U.S. 315 (1943). Although we do not believe that Colorado

River[15] or Burford[16] abstention are appropriate here, we hold that the principles of Younger require the

Court to stay its hand.

——————————————————

     [13] See Burford v. Sun Oil Co., 319 U.S. 315 (1943). According to the Supreme Court, Burford abstention is proper only when "(1) ... there are difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result of the case then at bar; or (2) where the exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern." New Orleans Public Service, Inc. v. Council of the City of New Orleans et al., 491 U.S. 350, 361 (1989) (internal quotations and citations omitted).

     [14] See Colorado River, 424 U.S. at 817.

     [15] The Supreme Court has counseled that the Colorado River doctrine is to be applied "parsimoniously." Colorado River, 424 U.S. at 817; See also Chase Brexton Health Services, Inc. v. State of Md. Dep't of Health & Mental Hygiene, 411 F.3d 457, 463 (2005). In this case, the thrust of the City Parties' argument is that, because Warner Street's claims are barred by the Anti-Injunction Act, abstention is necessary to avoid piecemeal litigation. Def.'s Mem. at 15. As we explain in footnote 11, however, the Anti-Injunction Act has no application here. Accordingly, we do not believe that "wise judicial administration ... clearly favors abstention." Colorado River, 424 U.S. at 817.

     [16] Briefly, we believe Burford abstention is inappropriate because Warner Street's claims under the Fifth and Fourteenth Amendments involve no difficult question of state law, nor do they "threaten a state interest in uniform regulation that outweighs the federal interest in adjudicating the case." See Martin v. Stewart, 499 F.3d 360, 369 (4th Cir. 2007) (rejecting the view "that a strong state interest alone could justify Burford abstention.") Indeed, almost all of the state-law questions raised in Warner Street's complaint were certified to (and answered by) the Maryland Court of Appeals in Chertkof v. Mayor & City Council of Baltimore, 497 F. Supp. 1252, 1260 (D. Md. 1980) (refusing to abstain under Burford in a case involving similar facts); see also Mayor & City Council of Baltimore v. Chertkof, 441 A.2d 1044 (Md. 1982). As in Chertkof, moreover, the impact of the City's urban renewal ordinance "falls [primarily] on the plaintiff," and therefore does not implicate a "land use decision[] applicable to the public at large." 497 F. Supp. at 1260.

1.      <u>Younger Abstention</u>

Absent extraordinary circumstances, the <u>Younger</u> abstention doctrine prohibits federal courts

from interfering with pending state judicial proceedings. <u>Younger</u>, 401 U.S. at 46.  Originally

formulated in the criminal context, the principles of <u>Younger</u> have since been extended to noncriminal

proceedings "when important state interests are involved." <u>Middlesex County Ethics Comm. v. Garden

State Bar Ass'n</u>, 457 U.S. 423, 432 (1982).  Accordingly, abstention under <u>Younger</u> is appropriate

when (i) a party seeks a declaratory judgement or injunction against an ongoing state judicial

proceeding; (ii) the state proceeding implicates important government interests; and (iii) the state

proceeding presents an adequate opportunity to raise constitutional claims. <u>Id</u>.; <u>see</u> <u>also</u> <u>Harper v. Pub.

Serv. Comm'n</u>, 396 F.3d 348, 352 (4th Cir. 2005).

To constitute an "ongoing" judicial proceeding for purposes of the <u>Middlesex County</u> analysis, a

state court action must be filed "before any proceedings of substance on the merits have taken place in

[] federal court."  <u>See</u> <u>Hawaii Housing Authority v. Midkiff</u>, 467 U.S. 229, 238 (1984) (quoting <u>Hicks

v. Miranda</u>, 422 U.S. 332, 342 (1975)). In this case, the City Parties began eminent domain

proceedings in the Circuit Court for Baltimore City before Warner Street filed its federal lawsuit. Since

that time, all that has occurred in this Court is the denial of Warner Street's motion for an *ex parte*

temporary restraining order. The Supreme Court has held that such a decision is not a sufficient

"proceeding of substance on the merits" to avoid the application of <u>Younger</u> and keep a case in federal

court. <u>Id</u>.; <u>see</u> <u>also</u> Chemerinsky, <u>supra</u>, at 840. Accordingly, the condemnation action initiated by the

City Parties is unquestionably an "ongoing" state judicial proceeding.[17]

Although the Fourth Circuit has not squarely addressed the issue, the weight of authority suggests that eminent domain proceedings implicate "important government interests" justifying <u>Younger</u> abstention. <u>See</u>, <u>e.g.</u>, <u>Duty Free Shop, Inc. v. Administracion De Terrenos De Puerto Rico</u>, 889 F.2d 1181, 1882 (1st Cir. 1989); <u>Ahrensfield v. Stevens</u>, 528 F.2d 193, 198-99 (7th Cir. 1975). More generally, the Fourth Circuit has recognized that land use and zoning questions are critical state interests for purposes of the <u>Younger</u> analysis. <u>See</u>, <u>e.g.</u>, <u>Harper</u>, 395 F.3d at 352. In the <u>Harper</u> case, the Court cited with approval to then-Judge Breyer's opinion in <u>Duty Free Shop, Inc.</u>, thus endorsing the specific proposition that eminent domain proceedings implicate core concerns of state sovereignty. 395 F.3d at 352. The Court is inclined to follow this reasoning. We therefore conclude that the condemnation proceedings presently before the Circuit Court for Baltimore City implicate important government interests, satisfying the second prong of the <u>Middlesex County</u> analysis.[18]

---

[17] In opposition to the City Parties' argument that this suit is barred by the Anti-Injunction Act (addressed in footnote 11), Warner Street contends that the City Parties filed first only by only by breaching their "promise" not to initiate condemnation proceedings until "late" in the week of April 16. <u>Pl.'s Mem.</u> at 1. Warner Street therefore argues that under principles of equitable estoppel, the City Parties "should be barred from using the ill-gotten advantage of having filed an eminent domain case a few hours before the [o]wner filed [its] case." <u>Id</u>. at 15. Although it is unclear whether Warner Street seeks to raise this claim in the abstention context as well, the Court nevertheless observes that the application of <u>Younger</u> does not turn on which party wins the proverbial race to the courthouse. <u>See</u> <u>Hicks</u>, 422 U.S. at 342. Assuming, *arguendo*, that the City Parties made and kept a promise not to begin condemnation proceedings until after Warner Street filed this action, the principles of <u>Younger</u> would nonetheless apply, so long as the City Parties began their state court action before "proceedings of substance on the merits" had taken place in this Court.

[18] Warner Street cites <u>Donahoe Constr. Co. v. Maryland-National Capital Park and Planning Comm'n</u> for the proposition that "there is nothing mystical about eminent domain which requires it to be treated differently than other cases which concern the powers of a state." 398 F. Supp. 21, 29 (D. Md. 1975) (<u>citing</u> <u>Alleghany County v. Frank Mashuda Co.</u>, 360 U.S. 185, 196 (1959)). In <u>Donahoe</u>,

Turning to the final <u>Middlesex County</u> factor, we conclude that the ongoing state proceedings provide Warner Street with an adequate opportunity to raise its constitutional claims.[19] The Circuit Court for Baltimore City is a court of general jurisdiction, and "we indulge the presumption that the state courts are willing and able to vindicate federal constitutional rights." <u>Cinema Blue of Charlotte, Inc. v. Gilchrist</u>, 887 F.2d 49, 54 (4th Cir. 1989). In defending against the City Parties' action, Warner Street may present the very same arguments under the Fifth and Fourteenth Amendments that it presents before this Court. Should those arguments prevail, Warner Street will obtain precisely the remedy it seeks here, i.e., a judgment that the taking is unconstitutional and an order forbidding the City to condemn the Properties. We are therefore confident that the pending eminent domain proceedings afford Warner Street an adequate constitutional forum.

Warner Street argues that it will be precluded from litigating *any* of its claims in the pending state proceeding if the Court abstains and dismisses this action with prejudice. <u>See Pl.'s Mem.</u> at 9-10 ("In effect, dismissal of this case with prejudice may deny the Owner the right to have *any* of its claims

---

however, the Court was concerned with the application of <u>Pullman</u> abstention, which counsels restraint when resolution of an unclear question of state law might obviate the need for a federal constitutional decision. <u>Railroad Comm'n of Texas v. Pullman Co.</u>, 312 U.S. 496 (1941). Moreover, to the extent <u>Donahoe</u> and <u>Mashuda</u> are inconsistent with the cases cited by the Court, we decline to follow their lead. <u>Accord</u> <u>Louisiana Power & Light Co. v. City of Thibodeaux</u>, 360 U.S. 25, 28-29 (1959) (stating that eminent domain is "intimately involved with the sovereign prerogative").

[19] In a prior filing, Warner Street expressed its concern that the City Parties would employ the "quick take" procedures "so as to deprive the Owner of any meaningful opportunity to contest the propriety of the taking[.]" <u>Pl.'s Mem. in Supp. of Motion for Temporary Restraining Order</u>, at 12. Since that time, however, the City Parties have opted to file a "regular" condemnation action, pursuant to Article 13, §§ 2-7(b), (h), and (jj) of the Baltimore City Code, in lieu of a "quick take" proceeding. Accordingly, the question of whether the "quick take" proceedings provide an adequate constitutional forum is not presently before the Court.

adjudicated by *any* court."). Under established principles of *res judicata*, however, this is simply not the case. For the doctrine of *res judicata* to apply, "there must be: (1) a final judgment *on the merits* in a prior suit; (2) an identity of the cause of action in both the earlier and the later suit; and (3) an identity of parties or their privies in the two suits." Pueschel v. United States, 369 F.3d 345, 354-55 (4th Cir. 2004) (emphasis added). A decision to abstain is *not* a judgment on the merits. See, e.g., Nivens v. Gilchrist, 444 F.3d 237, 247 (4th Cir. 2006) ("[W]hen a district court abstains from a case based on *Younger*, it should typically dismiss the case with prejudice; not on the merits... but instead because the court is denied the equitable discretion ever to reach the merits."). Accordingly, a dismissal with prejudice will not prevent Warner Street from litigating any of its claims in the Circuit Court for Baltimore City.

Finally, Warner Street argues that it has reserved its right, in accordance with England v. Louisiana State Bd. of Med. Examiners, 375 U.S. 411 (1964), to have its federal constitutional claims adjudicated by this Court. Pl.'s Mem. at 12.[20] This is a misunderstanding of the law. The England procedure applies in cases dealing with Pullman, not Younger, abstention. "[W]hereas Pullman exists in order to allow state courts to resolve complicated issues of state law," Younger rests partly on the notion that state courts are perfectly capable of resolving federal constitutional claims. Nivens, 444 F.3d at 246. Accordingly, "Younger does not contemplate those [federal] issues returning to federal

---

[20] England stands for the proposition that when federal courts abstain under the Pullman doctrine, the parties need try only the state law issues in state court, and may expressly reserve the right return to federal district court to litigate their federal claims. Id. at 415-16; see also Chemerinsky, supra, at 809. As we explain infra, however, the England reservation procedure has no application in the case before us.

court." Id. Because the Court's decision to abstain in this case is based on Younger and not Pullman abstention, Warner Street cannot assert an England reservation.

In sum, Warner Street asks us to enjoin ongoing state proceedings that implicate important government interests and provide an adequate forum for the consideration of constitutional claims. Under the principles of Younger, we are therefore required to abstain.[21]

### III.    Conclusion

For the foregoing reasons, the Court will, by separate order, GRANT the City Parties' motion and DISMISS this suit with prejudice.

It is so ORDERED this 3rd day of December, 2007.

/s/_____
Benson Everett Legg
Chief Judge

---

[21] Warner Street does not argue, nor does the Court believe, that any of the exceptions to Younger are applicable here. After reviewing the record, we cannot say that there is sufficient evidence to demonstrate bad faith or "extraordinary circumstances." Accord Aaron v. Target Corp., 357 F.3d 768 (8th Cir. 2004) (Plaintiffs failed to establish bad faith in § 1983 suit seeking injunction of pending condemnation proceedings). We also do not believe that the urban renewal now before us is "patently unconstitutional," and it is not plainly apparent that the ongoing state proceedings will fail to provide Warner Street with adequate constitutional protection. See Younger, 401 U.S. at 45 (citation omitted).